# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 13-CR-58 (SRN) |
| Plaintiff-Respondent, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Jose Alfredo Varela-Meraz, | |
| Defendant-Petitioner. | |

---

Andrew S. Dunne and Thomas M. Hollenhorst, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Plaintiff-Respondent

Jose Alfredo Varela-Meraz, Reg. No. 63321-051, Federal Correctional Institution, P.O. Box 1000, Oxford, Wisconsin, Pro Se Defendant-Petitioner

_____

SUSAN RICHARD NELSON, District Judge

This matter is before the undersigned United States District Judge on Defendant-Petitioner Jose Alfredo Varela-Meraz's pro se motion pursuant to 28 U.S.C. § 2255 for an order of this Court to vacate, set aside, or correct his sentence [Doc. No. 70] and for an evidentiary hearing to resolve factual matters in the record [Doc. No. 75]. The Government opposes Petitioner-Defendant's motions. (Govt.'s Opp'n Mem. [Doc. No. 76].) Defendant-Petitioner also filed a reply memorandum to the Government's response to his motions. (Def.-Pet'r's Reply [Doc. No. 79].) Based on a review of the file, record

1

and proceedings therein, and for the reasons set forth below, the Court denies Defendant-Petitioner's motions.

## I. BACKGROUND

In March 2013, Defendant-Petitioner was charged in a five-count indictment on drug possession and conspiracy charges, gun possession charges, and unlawful entry. (Indictment [Doc. No. 11].) At that time, attorney Robert D. Richman was Defendant-Petitioner's court-appointed counsel. (CJA 20 Appointment [Doc. No. 9].) Defendant-Petitioner contends that a conflict arose when Richman filed pretrial motions, allegedly against Defendant-Petitioner's request that no motions be filed. (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 7 [Doc. No. 71].) Instead, Defendant-Petitioner asserts that he simply wanted to plead guilty and "get the best deal possible with the Government." (Id.) In May 2013, Richman withdrew from representation when Defendant-Petitioner retained attorney Ignatius Udeani. (Notice of Substitution [Doc. No. 37].)

Pursuant to a plea agreement, on July 29, 2013, Defendant-Petitioner pleaded guilty to two counts in the Indictment – the counts alleging drug conspiracy and the use of a firearm during a drug trafficking crime. (See Doc. Nos. 45 & 46.) On November 7, 2013, Defendant-Petitioner appeared for sentencing, but argued that Udeani had not provided him with the discovery in his case. (Mot. to Withdraw ¶ 25 [Doc. No. 56].) The Court continued the sentencing date to February 7, 2014, and ordered that Udeani provide discovery to Defendant-Petitioner. (Id. ¶ 26.) Udeani provided the discovery and met with Defendant-Petitioner. (Id. ¶ 29.) At one of their meetings, Udeani contends that

2

Defendant-Petitioner expressed his desire to withdraw his plea in order to leverage a better offer of a reduced sentence from the Government. (Id. ¶ 36.) Udeani repeatedly advised that this proposed course of action was improper and unwise and instead recommended that Defendant-Petitioner accept responsibility and demonstrate remorse for the charged offenses. (Id. ¶ 39.)

In December 2013, Defendant-Petitioner filed several letters with the Court, expressing his general dissatisfaction with counsel for failing to provide discovery and a copy of the presentence investigation report and asked the Court to appoint substitute counsel. (Letters [Doc. Nos. 52, 53, 54, 55].) After Udeani filed a motion to withdraw as counsel on January 10, 2014 [Doc. No. 56], the Court held a status conference [Doc. No. 58]. Shortly thereafter, the Court reappointed attorney Richman to serve as Defendant-Petitioner's attorney [Doc. Nos. 59 & 60].

On May 21, 2014, the Court sentenced Defendant-Petitioner to a term of imprisonment of 248 months, which included 188 months on Count 1 and 60 months on Count 3, to run consecutively. (Judgment [Doc. No. 68].) The Government dismissed the remaining counts in the Indictment. (Id.) Defendant-Petitioner did not appeal his sentence. On March 12, 2015, he timely filed the instant motion, arguing that he was denied effective assistance of counsel because Mr. Udeani failed "to serve as a meaningful advocate during his attempted cooperation." (Def.-Pet'r's § 2255 Mot. at ¶ 12, Ground 1 [Doc. No. 70].) In his § 2255 motion and in a separate motion, Defendant-Petitioner seeks an evidentiary hearing as well as discovery "to resolve factual

matters in and out of the record." (Id., Ground 2; Def.-Pet'r's Mot. for Evid. Hr'g. [Doc. No. 75].)

In Defendant-Petitioner's memorandum submitted in support of his § 2255 motion, Defendant-Petitioner contends that he repeatedly told Udeani that he did not want to proceed to trial, but instead wished to cooperate with the Government. (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 8 [Doc. No. 71].) Specifically, he asserts that he told Udeani that he would fully cooperate, "but ONLY with the condition of being fully PROTECTED by the Federal Government." (Id. at 8-9) (emphasis in original). Defendant-Petitioner contends that when he asked Udeani if it was true that the Government protects cooperating defendants, Udeani replied, "Not really, this people [sic] don't really protect people like you hear them say they do. Just look at the movies?" (Id. at 7.)

In addition, Defendant-Petitioner asserts that he also wanted Udeani to obtain discovery

> because he wanted to see whether the Federal Agents had all the information of the Drug Organization that he was working for, based on the fact that the was interested in FULLY COOPERATING with the Agents by providing them ALL the Names, Drug Warehouses, Drug Couriers, and the Vehicles that were used all the way from Arizona to Minnesota; to include the entirety of the Names and locations of the persons to whom the Drugs were being delivered across Minnesota.

(Id. at 8.) When Udeani subsequently met with Defendant-Petitioner, Defendant-Petitioner contends that he again asked whether the Government would offer protection to

4

a cooperating witness.  (Id. at 9.)  Defendant-Petitioner alleges that when Udeani ignored the question, Defendant-Petitioner stopped asking him questions, "based on the fact that he suspected that [Udeani] might not want to help him in cooperating, since he had been recommended and paid by members of the Drug Organization, who had thereafter send [sic] Movant's family members to talk to him."  (Id.)

Defendant-Petitioner thus contends that his counsel was ineffective in plea negotiations for failing to communicate Defendant-Petitioner's willingness to cooperate.  (Id.)  Defendant-Petitioner contends that Udeani thus deprived him of the opportunity for a reduced sentence based on cooperation.  (Id. at 14.).

## II.   DISCUSSION

### A.   Standard for Relief

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

While § 2255 generally affords relief, it is only available in limited circumstances. The Eighth Circuit has held that:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the

procedural default and actual prejudice resulting from the error. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir.1996) (citation omitted). Beyond jurisdictional and constitutional errors, the permissible scope of § 2255 claims is "severely limited." Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en banc).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A petition can be dismissed without a hearing if: "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

**B.     Claims of Ineffective Assistance and Right to an Evidentiary Hearing**

In order to obtain relief for ineffective assistance of counsel, Defendant-Petitioner must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688 (1984). Defendant-Petitioner bears the burden of establishing to a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. This is a "heavy burden," Apfel, 97 F.3d at 1076, requiring a showing that the deficiency in counsel's performance was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." Strickland, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." Id. at 690. Moreover, a court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. Id. A defendant must then show that the deficient performance actually prejudiced the outcome of the proceedings. Id. at 687.

Defendant-Petitioner fails to meet the heavy burden necessary to demonstrate that counsel provided ineffective assistance. Defendant-Petitioner's claim that he told his attorney that he wanted to cooperate with the Government is directly contradicted by the Affidavit of Ignatius Udeani, submitted by the Government in opposition to Defendant-Petitioner's motions. Udeani attests that Defendant-Petitioner never asked him about the Government's protection for cooperating witnesses, nor did Defendant-Petitioner state that he wanted to obtain discovery in order to see whether the federal authorities "had all the information about the drug organization he was working for." (Udeani Aff. ¶¶ 6, 11 [Doc. No. 76-1].) Udeani further denies that Defendant-Petitioner told him that he was willing to disclose the names, drug warehouses, drug carriers, and vehicles used to transport drugs, as well as the names and locations of persons receiving the drugs. (Id. ¶ 12.) Also, Udeani denies stating that the Government provides no protection to cooperating defendants. (Id. ¶ 6-7.) Rather, Udeani contends that Defendant-Petitioner asked him to obtain the best plea offer possible from the Government in order to resolve the case and that Defendant-Petitioner did not want to go to trial. (Id.) Finally, Udeani contends that he is unaware of any drug dealer or drug organization, or person working on

their behalf, that "recommended and paid" for him to represent Defendant-Petitioner. (Id. ¶ 13.) Instead, he met only with Defendant-Petitioner's niece and mother, who paid for his services. (Id. ¶ 14.) Neither of them informed him, nor gave him reason to believe, that they had been referred to Udeani by a drug dealer or drug organization. (Id.)

The record in this case bolsters Udeani's affidavit. While Defendant-Petitioner contends in his § 2255 motion that he told Udeani of his desire to cooperate with the Government, he makes no such claims regarding his communications with prior counsel Richman. Instead, he claims that he told Richman what he also later told Udeani – that he did not want to go to trial, but wanted to get the best deal possible with the Government. (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 7 [Doc. No. 71].) Moreover, despite multiple opportunities to raise the issue with the Court or the Government, Defendant-Petitioner remained silent on the issue of cooperation. Notably, he said nothing concerning his desire to cooperate at his plea hearing, sentencing hearing, other hearings, or in his letters to the Court. Instead, he acknowledged at the plea hearing that the plea agreement comprised the entire agreement and understanding between him and the Government. (Plea Agmt. [Doc. No. 45].) In his letters to the Court, Defendant-Petitioner expressed his dissatisfaction with Udeani in general terms and in specific terms as to the sharing of discovery and the presentence investigation report. (See Letters [Doc. Nos. 52, 53, 54, 55].) He said nothing about counsel's supposed refusal to convey his interest in cooperating. (Id.) As the Government notes, the plea agreement made no reference to any agreement or desire of Defendant-Petitioner to cooperate. The Court thus finds that

Defendant-Petitioner's allegations to the contrary, he did not communicate to Udeani a desire to cooperate with the Government. Consequently, Udeani cannot be deemed ineffective for failing to convey information that Defendant-Petitioner did not provide in the first instance.

Assuming for the sake of argument, however, that Defendant-Petitioner had communicated his desire to cooperate to Udeani, and Udeani proved to be ineffective for failing to relay that desire to the Government, Defendant-Petitioner would still be required to show that counsel's ineffectiveness prejudiced the outcome of the proceedings. Strickland, 466 U.S. at 687. Notably, Defendant-Petitioner has presented no evidence that any information in his possession would have been useful to the Government. Defendant-Petitioner contends that he cannot do so now without legal counsel, for fear of self-incrimination, and because he lacks a certified language translator. (Def.-Pet'r's Reply Mem. at 7 [Doc. No. 79].)

But as the Government notes, Defendant-Petitioner was charged for crimes alleged to have occurred from 2009 through 2011, for which he was not indicted until March 2013 and did not plead guilty until July 2013. (Indictment [Doc. No. 11]; Plea Agmt. [Doc. No. 45].) Even had Defendant-Petitioner provided information concerning drug couriers and warehouses, it is far from certain whether any of this information would have been useful to the Government two years or more after the events in question.

In addition, if Defendant-Petitioner had provided information, the Government would not have been obligated to use it. And even if the Government had used

information provided by Defendant-Petitioner, there is no evidence to suggest that it would have amounted to "substantial assistance" under United States Sentencing Guidelines § 5K1.1 or Fed. R. Crim. P. 35(b) to support a motion for substantial assistance. Moreover, "'[t]he government has no duty to make a substantial assistance motion unless it has entered into a plea agreement with the defendant that creates such a duty.'" United States v. Davis, 583 F.3d 1081, 1097-98 (8th Cir. 2009) (quoting United States v. Mullins, 399 F.3d 888, 889-90 (8th Cir. 2005). Finally, even assuming all of the above, and if the Government filed a motion for substantial assistance, it would have been up to the Court to determine whether to grant the motion and to determine the amount of any reduction, if any. Again, even assuming that counsel's performance was deficient, which it was not, this series of highly speculative predicates and outcomes does not establish a reasonable probability that *but for* counsel's supposed errors, Defendant-Petitioner's sentence would have been different. See Strickland, 466 U.S. at 688. Accordingly, Defendant-Petitioner's claim for relief on the basis of ineffective assistance of counsel is denied.

As to Defendant-Petitioner's request for an evidentiary hearing and discovery, because his claims are contradicted by the record and the law, there is no need for discovery, his § 2255 motion is denied without an evidentiary hearing, and his separate motion for a hearing is likewise denied. Engelen, 68 F.3d at 240.

    **C.**    **Certificate of Appealability**

In order to appeal an adverse decision on a § 2255 motion, a movant must first

obtain a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." Fleiger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant-Petitioner Jose Alfredo Varela-Meraz's pro se motion pursuant to 28 U.S.C. § 2255 for an order of this Court to vacate, set aside, or correct his sentence [Doc. No. 70] is **DENIED**;

2. Defendant-Petitioner's pro se Motion for an Evidentiary Hearing [Doc. No. 75] is **DENIED**;

3. No evidentiary hearing is required in this matter; and

4. A Certificate of Appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 19, 2015

                                                           s/Susan Richard Nelson
                                                           SUSAN RICHARD NELSON
                                                           United States District Court Judge