UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jose Alfredo Varela-Meraz,<br><br>Defendant. | Case No. 13-CR-00058 (SRN/JJG)<br><br><br>**ORDER** |

Andrew S. Dunne, Katharine T. Buzicky, and Thomas M. Hollenhorst, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for the Government.

Jose Alfredo Varela-Meraz, Reg. No. 63321-051, FCI Elkton, P.O. Box No. 10, 8730 Scroggs Road, Lisbon, Ohio 44432, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Jose Alfredo Varela-Meraz's Pro Se Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. No. 101] ("Compassionate Release Motion" or "the Motion"). The Government submitted a response in opposition [Doc. No. 106]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies the Motion.

**I.      BACKGROUND**

On March 20, 2013, Mr. Varela-Meraz was charged by indictment with five federal crimes. On July 29, 2013, he pleaded guilty to two of the charged counts: conspiracy to distribute methamphetamine (Count 1), and using, carrying, and possessing a firearm

1

during and in relation to, and in furtherance of, a drug trafficking crime (Count 3). (*See* Minute Entry for July 29, 2013 [Doc. No. 44].)

As a part of his plea agreement, Mr. Varela-Meraz agreed to the following facts: that he was engaged in a conspiracy to distribute methamphetamine from the fall of 2009 to on or about April 20, 2011; that after he was arrested a total of 1,131.3 grams of methamphetamine (990 grams actual) and a loaded handgun were found in his vehicle; and that he distributed over 500 grams of methamphetamine during the period of the conspiracy. (Plea Agreement at 2.) For sentencing purposes, although the total amount of methamphetamine involved in the conspiracy was never determined, the parties agreed that the offense involved "more than 1.5 kilograms of methamphetamine (actual)". (Def. Sentencing Br. [Doc. No. 65] at 3.; *see also* PSR ¶ 24; Sentencing Tr. [Doc. No. 91] at 4:11–15 (no objections).)

The matter came on for sentencing on May 21, 2014. At that time, the Court found, based on a total offense level of 33 and a criminal history category of IV, that the applicable Guidelines' advisory imprisonment range was 188 to 235 months as to count 1. (Sentencing Tr. at 4:4–8.)[1] The Court then sentenced Mr. Varela-Meraz to a 248-month term of imprisonment, consisting of 188 months on Count 1 and 60 months on Count 3, to run consecutively. (Sentencing J. [Doc. No. 68] at 2.) The remaining three counts were dismissed on the Government's motion at the sentencing hearing. (*Id*. at 1.)

---

[1]   A statutory mandatory minimum sentence of 5 years applied to count 3, to run consecutively to any other term of imprisonment. 18 U.S.C. § 924(c) (2013); U.S.S.G. § 2K2.4(b), & n.2(A) (2013).

On March 12, 2015, Mr. Varela-Meraz moved this Court to vacate his sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 70]. The Court denied his motion on June 19, 2015 [Doc. No. 80]. Mr. Varela-Meraz then sought to appeal the Court's order, and the Eighth Circuit Court of Appeals denied him a certificate of appealability on October 15, 2016 [Doc. No. 87]. He requested leave to amend the § 2255 motion on January 8, 2018 [Doc. No. 92]. The Court denied this motion on July 31, 2018 [Doc. No. 98]. He also sought authorization by the Eighth Circuit to file a successive motion under § 2255, which the Eighth Circuit denied on May 31, 2018 [Doc. No. 94].

Mr. Varela-Meraz is currently incarcerated at FCI Elkton, a low security facility in Lisbon, Ohio. *See* Find an inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 18, 2024). He is 36 years old, and his projected release date is November 16, 2030. *Id*. On November 2, 2023, he submitted a request for compassionate release to the warden of his facility. (Compassionate Release Motion at 21.) He did not receive a response. (*Id*. at 4.)

## II. DISCUSSION

### A. The Law

Pursuant to the First Step Act, a court may reduce a prisoner's term of imprisonment, "after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A defendant may only bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the

3

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

While § 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that might warrant a reduction in sentence, Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In a policy statement, the Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the existence of an "unusually long sentence." U.S.S.G. § 1B1.13(b)(6). [2] The Commission clarifies that an unusually long sentence may qualify as an extraordinary and compelling reason where 1) the sentence being served is unusually long, 2) the defendant has already served at least 10 years of the sentence, 3) there has been a change in the law, 4) a change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and 5) the defendant's individualized circumstances support a finding of extraordinary and compelling circumstances. *Id*.

---

[2] The Government argues at length that § 1B1.13(b)(6) is invalid, as it (in the Government's words) "exceeds the bounds" of the Commission's delegated authority. *But see United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) ("§ 1B1.13 and its commentary may not be ignored."). Because the Court ultimately concludes that Mr. Varela-Meraz has not demonstrated extraordinary and compelling reasons under the applicable policy statement, it need not resolve and thus takes no position on the legal validity of the policy statement itself.

A defendant's rehabilitation while serving a sentence is not on its own an extraordinary or compelling reason for purposes of the compassionate release statute. 28 U.S.C. § 994(t). Rehabilitation may be considered, however, "in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(b)(5).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under 18 U.S.C. § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. Johnson*, No. 18-cr-0271, 2021 WL 2498524, at *2 (D. Minn. June 3, 2021), *aff'd*, No. 21-2339, 2021 WL 6197342 (8th Cir. June 21, 2021); *see also United States v. Perez*, No. 16-cr-154(4), 2022 WL 911563, at *2 (D. Minn. Mar. 29, 2022).

"Motions for compassionate release require an individualized inquiry." *United States v. Sims*, 87 F.4th 917, 919 (8th Cir. 2023). As the movant, the inmate bears the burden to establish that compassionate release is warranted. *United States v. Avalos Banderas*, 39 F.4th 1059, 1062 (8th Cir. 2022).

**B.    Analysis**

   **1.    Exhaustion**

Before being eligible to move a district court for release or reduction in sentence under 18 U.S.C. § 3582(c), an inmate must first exhaust the available administrative remedies. Inmates may demonstrate exhaustion in one of two ways: 1) by showing that they exhausted their right to administratively appeal a failure by the Bureau of Prisons to bring a motion on their behalf, or 2) by demonstrating that 30 days have lapsed from their facility warden's receipt of their request for such a motion. 18 U.S.C. § 3582(c)(1)(A).

In this case, Mr. Varela-Meraz alleges that he submitted a request for compassionate release to the warden of his facility on November 2, 2023, more than 30 days prior to filing his Compassionate Release Motion. The Government does not contest this fact. Accordingly, the Court finds that Mr. Varela-Meraz has satisfied the statutory exhaustion requirement, and proceeds to consider the Motion on the merits.

   **2.    Extraordinary and Compelling Reasons**

Mr. Varela-Meraz argues that there is a gross disparity between the sentence he is serving and a sentence that would be imposed today for the same conduct, and that the changes to the legal landscape resulting in this disparity render his sentence "unusually long" within the meaning of § 1B1.13(b)(6). The crux of his argument is that the guideline calculation reached by the Court in 2014 relied on the purity of the methamphetamine that he pled guilty to conspiring to distribute. He contends that because courts have moved away from adopting higher base offense levels for "actual" methamphetamine (as opposed to a mixture), he should receive a sentence reduction.

The drug quantity table in the current sentencing guidelines assigns base offense levels for drug-related offenses by the weight of the controlled substance involved. U.S.S.G. § 2D1.1(c). For methamphetamine offenses in particular, the base offense levels assigned by the table depend on the drug's purity. The table reflects a 10:1 severity ratio for the weight of "methamphetamine (actual)" or "ice" as compared to the weight of a mixture containing methamphetamine.[3] For example, the base offense level assigned under the guidelines for 50 grams of actual methamphetamine or ice equals the level assigned for 500 grams of methamphetamine mixture. U.S.S.G. § 2D1.1(c)(5). The Guidelines' ratio for methamphetamine's purity distinction has not changed since the time that Mr. Varela-Meraz was sentenced. *Compare* U.S.S.G. § 2D1.1(c) (2013), *with* U.S.S.G. § 2D1.1(c) (2023).[4]

Several district courts around the country, including in this district, have rejected the Guidelines' 10:1 purity ratio for methamphetamine offenses at sentencing and have varied downward on the basis of their policy disagreement. *See United States v. Ferguson*, No. 17-cr-204, 2018 WL 3682509, at *2–4 (D. Minn. Aug. 2, 2018) (citing cases and varying downward). The courts rejecting the purity ratio have noted that the ratio's history

---

[3]   The Guidelines treat a mixture of at least 80% d-methamphetamine hydrochloride as "ice," the equivalent to the same weight of 100% or "actual" methamphetamine. U.S.S.G. § 2D1.1(c), n.(C).

[4]   The applicable base offense level for certain weights of methamphetamine did change on November 1, 2014. *Compare* U.S.S.G. § 2D1.1(c) (2013), *with* U.S.S.G. § 2D1.1(c) (2014). The Court sentenced Mr. Varela-Meraz in anticipation of that change, and varied in accordance with the forthcoming amendments, which resulted in a two-point reduction to his base offense level as to count 1. (*See* Sentencing Tr. at 3:11–21.)

is rooted in politics rather than empirical evidence, that methamphetamine purity is no longer probative of a defendant's role or position in the chain of distribution, and the decision whether or not to order lab testing to establish purity is inconsistent. *Id*. The United States Supreme Court has affirmed the authority of district courts to reject the Guidelines for similar policy disagreements. *See Spears v. United States*, 555 U.S. 261, 264 (2009), *Kimbrough v. United States*, 552 U.S. 85, 91 (2007).

The trend of district courts rejecting the Guidelines' approach to methamphetamine offenses predates the docket history of this case. In a 2013 sentencing decision, cited in well over 100 subsequent decisions around the country, Judge Bennett for the Northern District of Iowa rejected the Guidelines' purity ratio on precisely the grounds asserted by Mr. Varela-Meraz here. *United States v. Hayes*, 948 F. Supp. 2d 1009, 1031–1033 (N.D. Iowa 2013). The *Hayes* decision was influenced by the decisions of district judges in the District of Nebraska, the Eastern District of New York, and the District of Massachusetts, as well as decisions by the Fifth and Tenth Circuit Courts of Appeals that affirmed district courts' discretion to reject the methamphetamine Guidelines for policy reasons. *See id.* at 1015–1017, 1028, 1031; *also* Mark. W. Bennett, *A Slow Motion Lynching? The War on Drugs, Mass Incarceration, Doing Kimbrough Justice, and a Response to Two Third Circuit Judges*, 66 RUTGERS L. REV. 873, 902 (2014) (discussing the *Hayes* decision and those that came before it). And at sentencing in this case, counsel for Mr. Varela-Meraz ably made strong arguments against application of the methamphetamine Guidelines for

many of the same reasons underlying those cases, albeit without emphasizing the purity disparity itself. (*See* Def. Sentencing Br. at 6–18; Sentencing Tr. at 4:23–7:25.)[5]

While many courts have rejected the methamphetamine Guidelines, the trend remains far from universal. And the Eighth Circuit Court of Appeals has consistently held that district courts may continue to consider the Guidelines for methamphetamine offenses at their discretion. *United States v. Heim*, 941 F.3d 338, 341 (8th Cir. 2019); *also United States v. Gonzalez*, 710 F. App'x 276, 278 (8th Cir. 2018). Thus, "'while a district court may choose to deviate from the guidelines because of a policy disagreement,' it is 'not required to do so.'" *Heim*, 941 F.3d at 340 (quoting *United States v. Manning*, 738 F.3d 937, 947 (8th Cir. 2014)).

To demonstrate that he is serving an unusually long sentence sufficient to constitute an extraordinary and compelling reason for resentencing, Mr. Varela-Meraz must show that a change in the law has occurred which would result in a significantly different outcome were he sentenced today. U.S.S.G. § 1B1.13(b)(6). The Court finds that these circumstances do not exist here. On May 21, 2014, at the time of his sentencing, district courts around the country were already exercising their discretion to disregard the Guidelines' methamphetamine purity distinction. This court had the discretion to vary downward from the Guidelines on that basis, and in fact considered a related policy argument at that time. As the Eighth Circuit has made clear, the Court would have the same

---

[5] Mr. Varela-Meraz's counsel even cited for the Court cases rejecting the methamphetamine Guidelines that were relied upon as precedent in the *Haynes* decision. (Def. Sentencing Br. at 7 (*citing United States v. Valdez*, 268 F. App'x 293 (5th Cir. 2008), *and United States v. Goodman*, 556 F. Supp. 2d 1002 (D. Neb. 2008)).

discretion were he to be sentenced today. Because no change in the law between May 21, 2014, and today would necessitate a different outcome for Mr. Varela-Meraz at sentencing, he has not established that his sentence is unusually long within the meaning of the Commission's policy statement.

Mr. Varela-Meraz argues that the combination of his unusually long sentence, and his post-conviction rehabilitation efforts, together amount to extraordinary and compelling reasons for compassionate release. The Court finds that his sentence is not unusually long within the meaning of the statute, for the reasons stated. And "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Accordingly, Mr. Varela-Meraz has not met his burden to demonstrate extraordinary and compelling reasons justifying resentencing.

### 3. The Sentencing Factors

The Court's discretion, on a motion for compassionate release, is not limited to the factors identified in U.S.S.G. § 1B1.13. *Marcussen*, 15 F.4th at 859. Rather, the Court must make an individualized determination as to whether extraordinary and compelling reasons merit a reduction in sentence. *See id.*; *also Sims*, 87 F.4th at 919. However, even assuming that a defendant demonstrates extraordinary and compelling reasons, the court must consider whether the 18 U.S.C. § 3553(a) sentencing factors warrant relief. *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020).

The Court applies the factors based upon Mr. Varela-Meraz's present circumstances, including any evidence of his post-conviction behavior. *Pepper v. United States*, 562 U.S. 476, 491 (2011). In this case, were the Court to find extraordinary and

compelling reasons for a sentence reduction under § 3582(c), the sentencing factors would still weigh against granting his motion.

Mr. Varela-Meraz states he is remorseful and that he poses no danger to society. He further argues that as a general matter, lengthy prison sentences do not reduce recidivism and are a waste of societal resources. The Court does not consider his general arguments, as it must make an individualized determination based on his specific circumstances and characteristics, as it did at his initial sentencing. *See* 18 U.S.C. § 3553(a).

While the Court commends Mr. Varela-Meraz for his sparse disciplinary record during his time in custody, it is concerned by his most recent infraction. On November 20, 2023, he apparently was in possession of "meth" in his facility [Doc. No. 107]. As the Court noted at the time of sentencing, the events underlying this case were driven by his own addiction to methamphetamine. (Sentencing Tr. at 16:19–22.) While the Court has never doubted the sincerity of his remorse, the danger which he poses to society apparently remains unabated.

The Court finds that the applicable sentencing factors do not warrant a sentence reduction for Mr. Varela-Meraz, and accordingly denies his motion on that ground as well.

### III.  ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Jose Alfredo Varela-Meraz's Pro Se Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. No. 101] is **DENIED**.

Dated: April 1, 2024

/s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge